# BUSH v. McGEE.

1. An agent who purchases goods for his principal, which are, without the consent of the agent, seized by the sheriff, by virtue of an execution against the agent, in favor of a third person, and sold to satisfy the judgment, is a competent witness in a suit by the principal against the sheriff for the trespass.

ERROR to the Circuit Court of Mobile.

Trespass by the plaintiff against the defendant in error.

The defendant, sheriff of Mobile county, pleaded not guilty, and also a justification that he seized the goods by virtue of legal process, as the property of one Casper Albert, and that they were his property.

The plaintiff, to maintain his action, offered to prove by the deposition of Albert, that the plaintiff furnished him with money, as his agent, to go to Mobile and buy groceries, &c. for him, to be retailed in his store at Greensboro. That he accordingly went to Mobile, purchased the goods as such agent, and had them marked in the name of his principal. That these goods were seized by the sheriff, by legal process, at the suit of one P. Chantron, as the property of witness and sold, and the money applied in payment of Chantron's judgment, (who had indemnified the sheriff,) before his deposition was taken, and that the taking of these goods was the trespass complained of in this action.

The defendant objected to the reading of the deposition of Albert on the ground that he was interested in the event of the suit; this objection was sustained by the Court, and the deposition excluded. To which the plaintiff excepted. Judgment was rendered for the defendant.

The plaintiff now assigns for error the rejection of the deposition.

CAMPBELL, for plaintiff in error.

STEWART, contra, cited 1 Porter, 105; 4 id. 63.

ORMOND, J.—The only question presented on the record is, whether the witness, Albert, was interested in the event of the suit? The facts are, that he was furnished with money by the plaintiff to go to Mobile and purchase goods for him, and as his agent. That he purchased the goods accordingly, and that they were seized by the defendant, as sheriff, by virtue of an execution against the witness, and sold, and the proceeds applied to the satisfaction of the judgment against him— the sheriff having been indemnified by the judgment creditor.

The argument of the counsel for the defendant is, that as the debt of the witness has been paid by the sale of the goods, he is liable over to the plaintiff, and has therefore a direct interest in sustaining the action against the sheriff.

We are not informed what the precise character of the bailment in this case was, whether the agency was undertaken by the witness for the sole benefit of the plaintiff, or whether he was to receive a compensation for his services, and therefore beneficial to both. In the first case, he would only be responsible for gross, and in the latter for ordinary neglect; but in either state of the case we are unable to perceive, from the facts as stated on the record, any liability on the part of the witness to the plaintiff. The injury to the plaintiff, and loss of the goods, cannot, with any propriety, be ascribed to his negligence, or want of proper care and diligence. The levy by the sheriff, was an act he could neither control or prevent; it was in fact the *vis major* to which he could oppose no resistance, and for which, therefore, he should not be held responsible.

It is however, supposed that he is responsible to the plaintiff, because the product of the sale of the goods has gone in discharge of the judgment against him. If this be so, an implied assumpsit must be raised against him, by operation of law, in consequence of the payment of the judgment, without his consent and against his will. If the plaintiff had voluntarily paid the judgment, it is clear that he could not have maintained indebitatus assumpsit for the amount so paid against the witness, and certainly that would be as strong a case as the present, for an implied promise. In either case the judgment would be discharged and a benefit conferred on the witness; but in both there is wanting the essential ingredient to

constitute indebtedness on his part—his consent that the relation of debtor and creditor should be thus established.

It results from this view of the case, that the witness had no direct interest in the event of the cause; that he might have been biassed in favor of the plaintiff is more than probable; but this would have gone to his credit, and not to his competency.

The case of Holman v. Arnott, [4 Porter, 64,] is relied on by the defendant in error, as being directly in point. The facts were, that one Surber had sold to Holman a wagon, which was afterwards levied on by attachment, by Arnott, upon a debt due by Surber, and this Court held he was a competent witness for the plaintiff, because his interest was balanced between the attaching creditor and his vendee. The Court proceed further, and say, that if the attaching creditor had obtained judgment, and the proceeds of the wagon had been applied in discharge of such judgment, he would then have been incompetent, because the judgment in the attachment was. at all events, satisfied, but as he was still liable to his vendor, the equillibrium was destroyed. Admitting the law in this supposed case to be as stated, it is unlike this case, in this important particular, that here the witness was not the *vendor* of the plaintiff, but the mere agent, and does not appear to be in any way responsible to him.

Let the judgment be reversed and the cause remanded.